1 | David Biderman, State Bar No. 101577
dbiderman@perkinscoie.com
2 | Sara L. Chenetz, State Bar No. 206936
schenetz@perkinscoie.com
3 | PERKINS COIE LLP
1888 Century Park East, Suite 1700
4 | Los Angeles, CA 90067-1721
Telephone: 310.788.9900
5 | Facsimile: 310.788.3399

6 | Attorneys for U.S. Bank, N.A., as Trustee
for LSF9 Master Participation Trust, and
7 | Caliber Home Loans, Inc.

8 | MALCOLM & CISNEROS, ALC
2112 Business Center Drive, 2nd Floor
9 | Irvine, CA 92612
Telephone: 949.252.9400
10 | Facsimile: 949.252.1032

11 | Appearing on Its Own Behalf

12 | MCCARTHY & HOLTHUS, LLP
1770 4th Avenue
13 | San Diego, CA 92101-2607
Telephone: 619.685.4800
14 | Facsimile: 619.685.4810

15 | Appearing on Its Own Behalf

16

UNITED STATES BANKRUPTCY COURT

17

CENTRAL DISTRICT OF CALIFORNIA

18

RIVERSIDE DIVISION

19

20

21 | In re:

22 | DOUGLAS SCOTT DIER and
GUADALUPE DIER,

23

Debtors.

24

25

26

27

28

Case No. 6:10-bk-39284 WJ

CHAPTER 13

**RESPONSE OF CALIBER HOME LOANS, INC., MALCOLM AND CISNEROS AND MCCARTHY & HOLTHUS LLP TO ORDER TO SHOW CAUSE ISSUED ON AUGUST 2, 2018; DECLARATION OF SARA L. CHENETZ IN SUPPORT**

Hearing:
Date: September 5, 2018
Time: 2:30 p.m.
Place: Ctrm 304

140955799.6

U.S. Bank, N.A., as Trustee for LSF9 Master Participation Trust and Caliber Home Loans, Inc. on its behalf (collectively, "Caliber"), by and though their undersigned counsel, respectfully responds to this Court's August 2, 2018 Order to Show Cause ("OSC"), which is joined by the law firms of Malcolm & Cisneros and McCarthy & Holthus LLP (collectively "OSC Firms"), both of which appeared as counsel to Caliber in this case.[1] As an initial matter, Caliber addresses the questions raised by the Court in paragraph 8 of the OSC. (A) Caliber does believe that Debtors are now current in paying their mortgage.[2] (B) Caliber has withdrawn the Notice of Post-Petition Default filed on November 3, 2015. (C) Caliber hereby requests that the Court vacate the order for relief from stay ("RFS Order") issued in this case (with proviso that the Senior Secured claim (Claim No. 4, as amended) is reinstated, *nun pro tunc*, as of the date of the filing of the Senior Secured Proof of Claim, as the RFS Order states it is vacating the secured portion of the claim).

For the reasons discussed below, Caliber respectfully submits it should not be sanctioned for filing a Notice of Post-Petition Default and Motion for Relief from Stay. The OSC Firms respectfully submit they too should not be sanctioned for these reasons.

## INTRODUCTION

Caliber should not be sanctioned for several reasons. First the default notice was filed shortly after the servicing of this debt was transferred to Caliber, the third loan servicer on this home mortgage. The Chapter 13 Trustee's Notice of Cure Payment was filed on October 13, 2015 and his final report two days later, on October 15, 2015. When Caliber responded to these pleadings, on November 3, 2015, it had not yet ascertained that accounting or escrow information was inaccurate. As further discussed below, Caliber reapplied the payments, bringing the loan current, as soon as soon as it uncovered that the loan had an escrow discrepancy, as discussed in

---

[1] Perkins Coie LLP first appeared in this case on August 14, 2018. See Declaration of Sara Chenetz ("Chenetz Decl."),    3.

[2] On November 1, 2017, servicing of the Debtors' loan (the "Loan") was transferred from Caliber to Rushmore Loan Management Servicers, LLC. *See* Declaration of Eric Smith,    19.] Counsel for Rushmore informed counsel for Caliber, on August 14, 2018, that the loan is current. *See* Chenetz Decl.,    4.

the accompanying declaration of Eric Smith, an Assistant Vice President—Bankruptcy and Foreclosure at Caliber.

Second, Caliber has acted expeditiously in responding to Debtors' and the Court's concerns, so that the Debtors may have their case reopened and quickly proceed to discharge. Indeed, upon receiving notice of Debtors' inquiry and proof of payments, back in March 2017, Caliber researched, responded and rectified its accounting, resulting in the Debtors' account reflecting current. Upon learning of the filing of the pending motion to reopen the bankruptcy case, when it was served with the OSC, Caliber, through counsel, has been diligently meeting and conferring with Debtors' counsel endeavoring to stipulate to terms on which Debtors, Caliber and the OSC Firms all support vacatur of the OSC, subject to approval of this Court.

Third, Caliber has implemented policies and procedures to avoid such inadvertent accounting discrepancies going forward. Starting on or about August 2016, Caliber put in place new auditing protocols and software to validate data when onboarding loan information from a predecessor servicer. Mr. Smith has been instrumental in managing the implementation of these rigorous auditing protocols so Caliber can ensure proper payment application. Caliber is prepared to present Mr. Smith to the Court at the September 5 hearing upon the OSC to further describe these procedures.[3] When Caliber onboarded the Debtors' mortgage loan account, those records included a discrepancy in the escrow account, and the current auditing protocols were not yet in place. The inadvertent escrow is a one-off occurrence and has not been identified as a systemic issue. The escrow account and payment application that Caliber inherited did not result in any delinquent credit reporting. Since receipt of the OSC, Caliber has worked diligently to see that the borrower is made whole.

Fourth, the record in this case is clear that the denial of the Debtors' request for a discharge resulted from actions (and inaction) by their prior attorney. For example:[4]

---

[3] Caliber is also concurrently submitting a separate Application to modify the OSC to allow Mr. Smith to appear in place of Caliber's chief executive officer, Sanjiv Das.

[4] Caliber asks that the Court take judicial notice of prior proceedings in this case pursuant to F.R.E. 201.

•       On March 7, 2016, this Court issued an Order Setting Status Conference, which can be found on the court docket at number 87. It begins: "The debtor(s) in this case have filed one or more applications for entry of discharge pursuant to section 1328(a). However, the application(s) are incomplete or contain other errors. Rather than simply deny the application(s), the Court shall provide an opportunity for the debtor(s) to provide new application(s)."

•       Between March and August 2016, this Court continued the status conference at least twice to provide time for improved submissions to him on behalf of the debtors. Then, on August 26, 2016, the Court denied the Debtors' motion for entry of a discharge saying prior applications were incomplete and he had provided the opportunity for new applications to be filed. Indeed, this order, which can be found on the court docket at number 98, states: "an extensive discussion occurred on the record on June 22, 2016 regarding the issues that need to be addressed. The Court continued the matter to August 10, 2016 to provide a further opportunity to submit revised applications. Counsel for the debtors appeared on June 22, 2016 and indicated she would submit revised applications. She never did so. And, neither the debtors nor counsel for the debtors appeared on August 10, 2016."

•       Five months later, on January 25, 2017, the Court denied another application filed by Correa & Osuna. The order doing so, which can be found on the court docket at number 120, states: "The applications are denied with prejudice. Counsel should review the caselaw and issues discussed on the record."

•       The opposition to the relief from stay motion, docket number 126, filed in the case lacked any credible evidence of facts alleged. Only a declaration of counsel and exhibits to it were filed. Counsel did not have personal knowledge of those facts. This declaration does not state the debtors were current in their payment obligations. It instead says taxes were paid by debtors and a prior servicer. The response filed to the opposition to the relief from stay motion largely argues that debtors did not satisfy their burden of proof.

The entry of the RFS Order did not have impact on Debtors' rights. The case had been closed without a discharge. The automatic stay was not in effect at the time the RFS Order was entered. Caliber could have commenced foreclosure proceedings without the RFS Order being

1    entered. Shortly thereafter, Caliber confirmed to Ms. Dier that Debtors' loan had been brought

2    current by the reapplication of payments once Caliber was made aware of the issue with the

3    establishment of the escrow account. Caliber took no action in furtherance of foreclosure

4    thereafter. Therefore, while Caliber regrets any upset Debtors experienced, when the escrow issue

5    was reviewed in March 2017, the issue was promptly corrected.. Under the facts and

6    circumstances presented, Caliber respectfully submits that sanctions should not be entered against

7    it.

8         Finally, Caliber's Chief Executive Officer, Sanjiv Das, has no information or personal

9    knowledge on these specifics and could not provide the court with admissible or meaningful

10   testimony on this issue.  Caliber has provided admissible evidence and Mr. Smith can testify

11   about the underlying loan and Caliber's procedures (as well as the new audit procedures).

12                                   **<u>PRIOR PROCEEDINGS</u>**

13        As detailed below, Caliber did not acquire servicing rights to this loan until August 23,

14   2015.  Prior to the time when Caliber began servicing this loan, certain payments were improperly

15   applied due to the erroneously establishment of an escrow account, as this was a non-escrowed

16   loan.  Caliber identified this issue and corrected the payment applications after the filings in this

17   bankruptcy case and before the OSC issued by this court.  Caliber promptly informed the

18   borrowers about what had occurred and how Caliber had corrected the issue.

19        The Debtors commenced this chapter 13 case on September 10, 2010 ("Petition Date")

20   and filed a Chapter 13 Plan [Docket No. 2] ("Plan") on the Petition Date, represented by the law

21   firm of Correa & Osuna ("Debtors' Prior Counsel").

22        Prior to the Petition Date, Debtors granted two deeds of trust on their principal residence

23   ("Property") to BAC Home Loans ("BAC"). As of the Petition Date, Schedule D of the Debtors'

24   Schedules of Assets and Liabilities [Docket No. 1], indicates the principal amount due on

25   Debtors' senior secured claim ("Senior Secured Claim") on the Property was $405,955, the

26   principal amount due on Debtors' junior secured claim on the Property was $63,375, and the

27   value of the Property was $391,180;

28

The Debtors' Plan provided that Debtors would make monthly post-petition mortgage payments directly to BAC, cure $26,921 in arrearages owed to BAC on the Senior Secured Claim through monthly plan payments of $448.68, and the total monthly plan payments would be $499, resulting in a 0% recovery for non-priority creditors, and the Chapter 13 Trustee later was able to make distributions to non-priority creditors [Docket Nos. 59, 70]. BAC filed two proofs of claim, one in connection with its Senior Secured Claim, initially filed on November 30, 2010, in the amount of $405,955.43 and stating Debtors were in arrears in the amount of $28,549.28 (Claim No. 4) (as amended and supplemented, the "Senior Secured POC"), and the other in connection with its junior secured claim, initially filed on November 22, 2010 in the amount of $68,103.83 (Claim No. 3), later amended on May 20, 2013, to be in the amount of $2,176.85 and acknowledging forgiveness of the remainder of the junior secured debt. By order dated January 21, 2011, this Court entered its Order Confirming Chapter 13 Plan (Doc. No. 23), without objection.

On October 26, 2011, Bank of America, N.A., as successor by merger to BAC, filed a Notice of Mortgage Payment Change (Claim No. 7-1) indicating that the total monthly payments would increase to $3,185.44, effective January 1, 2012, with the addition of $817.76 being for "escrow change," and no objection or other response was filed to this Notice of Mortgage Payment Change;

On or about October 23, 2012, BAC transferred its rights and obligations in connection with the Senior Secured Claim to Ocwen [Docket No. 46]. On or about August 23, 2015, Ocwen transferred its rights and obligations in connection with the Senior Secured Claim to U.S. Bank, c/o Caliber, as servicer [Docket No. 67]. The original servicer, BAC, had placed an impound account on the loan for collection of taxes in escrow and when Caliber onboarded the Debtors' account, it incorporated Ocwen's transaction history, which incorporated BAC's transaction history, including the impound of the escrow, which is now known to be not what the debtor wanted. [Declaration of Eric Smith ("Smith Decl."),    10.][5] This led Caliber to disburse tax

---

[5] Mr. Smith is prepared to appear at the September 5 OSC and specifically describe to the court the events that occurred when the loan was transferred to Caliber, Caliber's proper crediting of

payments and to note the Debtors default, as post-petition payments were insufficient. [Smith Decl.,    10.] At that point in time, Caliber was entirely unaware the Debtors were paying their taxes outside the established escrow account. [Smith Decl.,    11.] Further, the inclusion of the escrow was part of the proof of claim on the Senior Secured Claim and was neither the Debtors nor their counsel at the time objected. (Claim No. 4, as amended).

On October 13, 2015, the Chapter 13 Trustee filed a Notice of Final Cure Payment [Docket No. 69] ("Cure Notice"), indicating that $28,549.28 in cure payments had been paid by the Chapter 13 Trustee and that Debtors are making monthly direct mortgage payments in an unspecified amount. Thereafter, on November 3, 2015, U.S. Bank, through counsel, filed a Response to Cure Notice stating Debtors were $36,647.53 in arrears in post-petition payments [Docket No. doc (sic)]. ("Default Notice"), and Debtors did not file any reply or other response to the Default Notice. Despite the Default Notice in November 2015, Caliber did not receive evidence from Debtors that payments were being paid which were being allocated from escrow. [Smith Decl.,    12.]

By order dated March 7, 2016, this Court issued its Order Setting Status Conference [Docket No. 86] stating Debtors' applications for a discharge, which were filed by Debtors' Prior Counsel, were incomplete and contained errors and providing Debtors with the opportunity to correct or refile their applications for discharge.

On March 7, 2016 and March 9, 2016 [Docket Nos. 88-89], Debtors filed additional applications for discharge represented by Debtors' Prior Counsel. By order dated August 10, 2016, this Court entered its Order Denying Applications [Docket. No. 98], denying Debtors' applications for discharge, noting that Debtors and Debtors' Prior Counsel had not appeared at the hearing thereon and Debtors' Prior Counsel did not revise Debtors' applications for discharge though she said she would do so.

By application dated September 14, 2016, Debtors, through Debtors' Prior Counsel, filed an Application to Reopen Chapter 13 Case and Obtain Discharge [Docket No. 107]. By order

the account and information supplied to borrowers, and the onboard audit procedures Caliber has put in place to further assure proper crediting of accounts.

dated January 15, 2017, this Court denied the Debtors' then most recent filed application for a discharge [Docket No. 120], stating "counsel should review the caselaw and issues discussed on the record." As of January 2017, Caliber's records still indicated that Debtors were due for post-petition payments, totaling $38,225.25. [Smith Decl.,    13.]

On February 8, 2017, U.S. Bank filed a Motion for Relief from Stay Re: Real Property (which was the Property) [Docket No. 124] ("RFS Motion"). On February 16, 2017, Debtors filed an opposition to the RFS Motion ("RFS Opposition"), through Debtors' Prior Counsel [Docket No.126] and U.S. Bank filed a reply ("RFS Reply") to the opposition [Docket No. 127]. By order dated March 6, 2017, the RFS Motion was granted [Docket No. 131] ("RFS Order"), and the case was again closed without a discharge [Docket No. 135].

On or about March 9, 2017, Caliber received Debtors' evidence of payment of county taxes. [Docket No. 140, *see* pgs. 5-8.] After reviewing Debtors' escrow account, on April 27, 2017, Caliber determined that the loan was escrowed by the original servicer and Caliber took steps to resolve the discrepancy. [*Id*.] On May 2, 2017, Caliber advised Debtors of the correction and relayed information that even with that correction the account was still owing due for three monthly installments. [*Id*.] On or about May 11, 2017, Caliber received an inquiry from the Consumer Financial Protection Bureau ("CFPB"), wherein Debtors expressed concerns regarding the status of the default on their account. [*Id*.] On May 15, 2017, Caliber received payment of the three contractual monthly installments, bringing the account current. [*Id*.] On May 18, 2017, Caliber responded to Debtors CFPB inquiry, explaining that after correction of the escrow issue and recent receipt of three (3) installments on May 15, 2017, the account was contractually current. [*Id*.]

On July 3, 2018, Debtors filed a Motion in a Chapter 7 or 13 Case (1) to Reopen Case and (2) For Extension of Time to File Forms Required for Discharge [Docket No. 140] ("July 2018 Motion"), represented by The Turoci Firm ("Debtors' Current Counsel"). On August 1, 2018, an initial hearing on the July 2018 Motion was held [Docket No. 144]. On August 2, 2018, the Court issued its Order to Show Cause Regarding Imposition of Sanctions Against Caliber Home Loans

1   and the Law Firms of McCarthy & Holthus, LLP and Malcolm Cisneros and Order Directing

2   Personal Appearances [Docket No. 146].

3   ## CALIBER SHOULD NOT BE SANCTIONED

4   <u>Pertinent Standard</u>

5   Federal courts have inherent power to impose sanctions against attorneys and parties for

6   "bad faith" conduct in litigation. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). "Bad faith"

7   means that the party or counsel acted "vexatious, wantonly or for oppressive reasons." *Id.* at 45-

8   46. The inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited

9   source; an implied power squeezed from the need to make the court function." *Id.* at 43.

10  Moreover, "[b]ecause inherent powers are shielded from direct democratic controls, they must be

11  exercised with restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764

12  (1980).

13  Bad faith consists of something more egregious than mere negligence or recklessness.

14  *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001). Indeed, the "bad faith requirement sets a

15  high threshold" for use of the court's inherent power because "forceful and effective

16  representation often will call for innovative arguments" and the court should not use its inherent

17  power in a manner that "may deter future parties from pursuing colorable claims." *See Primus*

18  *Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649-50 (9th Cir. 1997). Accordingly, a finding of

19  bad faith is "reserved for ***the rare and exceptional case*** where the action is clearly frivolous,

20  legally unreasonable or without legal foundation, or brought for an improper purpose." *Id.* at 649

21  (internal quotation marks and citation omitted) (emphasis added).

22  <u>Application to this Case</u>

23  Caliber corrected the escrow status on this loan, which was established by the original

24  servicer, as soon as it was brought to Caliber's attention, and well over a year ago. [Smith Decl.,

25  10-11.] When proof of payment was ultimately provided to Caliber, it quickly audited and

26  remedied Debtors' account to reflect that it was current. [Smith Decl.,    14-18.] The Default

27  Notice and RFS Motion were filed before the escrow discrepancy was uncovered and Caliber has

28  now withdrawn the Default Notice. Instead of pointing out any error in the Default Notice,

-9-

1    Debtors' prior counsel cited the information in that notice as evidence of why relief from stay

2    should not be granted. [Docket No.126.] Additionally, the RFS Opposition filed in the case

3    lacked any credible evidence to support the Debtors' allegations. [Docket No.126.] Only a

4    declaration of counsel and exhibits to it were filed. [*Id.*] Counsel did not have personal knowledge

5    of those facts and this declaration does not state the debtors were current in their payment

6    obligations. [*Id.*] It instead says taxes were paid by debtors and a prior servicer. [*Id.*] The RFS

7    Reply largely argues that debtors did not satisfy their burden of proof. [Docket No. 127]. As

8    Debtors readily admit, despite being represented by counsel and having multiple occasions to do

9    so, it was not until after the RFS Order was entered that Debtors ever provided Caliber with any

10   evidence of current mortgage payments. Debtors' counsel perpetuated this error instead of trying

11   to correct it. If they had brought it to Caliber's attention, as Ms. Dier ultimately caused to happen

12   later, Caliber would have caught it earlier.

13          In the July 2018 Motion and Ms. Dier's accompanying declaration, she notes Debtors'

14   Prior Counsel did not object to the lender's claim, even though the Debtors disagreed with the

15   claim. [*See* Docket No. 140,    4 of Declaration of Ms. Dier.] Also, as noted in that declaration,

16   once Caliber determined escrowed funds had been misapplied, this was immediately corrected.

17   [*Id.*] It is unfortunate that the Debtors experienced delay in receiving a discharge; however, that is

18   largely or entirely of Debtors' Prior Counsel's making—not Caliber.

19          <u>Caliber Has Implemented Safeguards That Will Protect Other Customers</u>

20          Recognizing the need for auditing protocols when onboarding account information from

21   former servicers, starting on or about October 2016, Caliber instituted additional safeguards to

22   validate data received from former servicers. [Smith Decl.,    20.] The audit protocols are

23   designed to protect Caliber's customers from the rare occurrence that a former servicer's

24   accounting was improper. [Smith Decl.,    20.] Caliber employee, Mr. Smith, has been key in

25   managing the implementation of the auditing protocols so Caliber can assure its customers that

26   their mortgage loans are properly accounted when Caliber takes over servicing obligations.

27   [Smith Decl.,    20.] The Debtors' mortgage loan account included an unfortunate discrepancy

28   that predated the auditing protocols now in place, but is also a rare, one-off occurrence in light of

1    the thousands of loans Caliber onboards from prior servicers, year-in and year-out. [Smith Decl.,

2    21.]

3                    Debtors Have Not Shown and Cannot Show They Are Entitled to Any Damages

4          The Debtors' response to the OSC, filed on August 13, 2018, provides no admissible

5    evidence of damage.[6] Debtors purport to claim three main categories of damages in the

6    supplemental declarations: (1) emotional distress damages, (2) damage to Debtors' credit and

7    resulting economic loss, and (3) attorney's fees incurred. The supplemental declarations produced

8    in response to the OSC by Debtors are wholly deficient in establishing damages which Debtors'

9    are entitled to recover.

10         **First,** to the extent Debtors' seek to recover for stress and frustration they have

11    experienced in not obtaining a discharge, Courts have uniformly held that emotional distress

12    attending the litigation process is not compensable. *Camenisch v. Superior Court*, 44 Cal. App.

13    4th 1989, (1996); *see also Timms v. Rosenblum*, 713 F.Supp. 948, 955 (E.D. Va. 1989) (denying

14    recovery because "[t]he simple truth is that mental anguish attends all litigation"), aff'd 900 F.2d

15    256 (4th Cir. 1990).   Bankruptcy Rule of Procedure 9011(c)(2) provides a limitation upon the

16    types of damages that may be awarded.[7]   The Debtors have further provided no evidence of

17    emotional distress damages caused by Caliber and, likewise, are not entitled to claim emotional

18    distress damages in their Motion. If Mr. Dier suffered from stress in 2016, it was not because of

19    the grant of relief from stay, as that did not occur in 2016. The declaration suggests that Ms. Dier

20    took on a long effort to clarify the record, after relief from stay was granted. Yet, relief from stay

21    was granted in March 2017 and Caliber sent Ms. Dier the letter attached to the pending motion in

22

23    ---

24    [6] Caliber will file its evidentiary objections in accordance with Local Rule 9013-1.

25    [7]      (C)(2)  Nature of Sanction; Limitations. A sanction imposed for violation of this
      rule shall be limited to what is sufficient to deter repetition of such conduct or
      comparable conduct by others similarly situated. Subject to the limitations in

26    subparagraphs (A) and (B), the sanction may consist of, or include, directives of

27    a nonmonetary nature, an order to pay a penalty into court, or, if imposed on
      motion and warranted for effective deterrence, an order directing payment to the

28    movant of some or all of the reasonable attorneys' fees and other expenses
      incurred as a direct result of the violation.

1    May 2017, only one week after Caliber received a letter from the CFPB. [Docket No. 140, see

2    pgs. 5-8.] Thus, the matter was resolved within two months.

3    **Second**, the Debtors have provided no evidence of damage resulting from a decreased

4    credit score, let alone that Caliber's actions or inactions negatively impacted their credit. Ms. Dier

5    appears to have good credit, despite Ms. Dier's status as a consumer who has sought bankruptcy

6    protection, based on the credit scores submitted with the Torna Bell affidavit.  There is not an iota

7    of evidence that Ms. Dier attempted to get a car loan, an application for a loan was rejected

8    because she did not receive a discharge in her chapter 13 case to date, or she was offered a higher

9    rate than she might have had if a discharge had been entered. There is likewise no evidence Ms.

10   Dier attempted to refinance her home loan. Ms. Dier is not the average consumer. She is a

11   consumer who filed a chapter 13 case in recent years and should not expect to have an excellent

12   credit score.

13   It is pure speculation to suggest the Diers' mortgage would have decreased by the round

14   number of $400 a month for an unexplained total reduction in payments of $149,618, seemingly

15   without any present value discount. Even before a present value discount, at $400/month, a

16   $149,618 saving would take over 31 years to accomplish. 149,618/400/12 = 31.17. Of course,

17   printouts of online mortgage calculators with estimated out of date amounts are not evidence.

18   The declaration of Torna Bell also lacks any evidentiary foundation. She asks the Court to

19   rely on her opinion that the credit scores of the Debtors were impacted by negative reporting,

20   when it fact there was no reporting during the pendency of the bankruptcy. [*See* Docket No. 157,

21   Page 41-42,        4-5]. The declaration is speculative at best. No credit reports are provided, much

22   less an error identified in those reports. Ms. Bell does not explain the calculations or analysis she

23   undertook to reach her conclusion that the Diers were harmed to the amount of $31,000 exactly.

24   [*See id.* at       7.] If Debtors are proffering Ms. Bell as an expert witness who could provide an

25   expert opinion and the court would entertain such evidence, the federal discovery rules

26   requirements on expert reports and discovery must apply. Bankr. R. Pro. 7026.

27   **Third**, the attorney's fees incurred by Debtors were not incurred at the hands of Caliber.

28   As discussed, above, the denial of the Debtors' request for a discharge resulted from actions (and

1  inaction) by their prior attorney. The record in this case is clear that Debtors' Prior Counsel made

2  a misstep at every turn. In terms of the attorney's fees claimed by Debtors' Current Counsel,

3  again, the fees were not the result of anything Caliber failed to do. The necessity of reopening the

4  bankruptcy and seek discharge flows directly from Debtor's Prior Counsel's errors. As admitted

5  by Debtors, Caliber had resolved their default, in an extremely timely manner once Debtors

6  finally provided evidence of payments months before the Debtors' Current Counsel was engaged.

7  Additionally, Debtors' or their Current Counsel failed to provide Caliber with notice of their

8  Motion to address or request withdrawal of the Default Notice (which has now been withdrawn).

9     To the extent that the Court is inclined to issue Debtors any attorney's fees, such a

10  recovery should not exceed the fees claimed by Debtors' Current Counsel, The Turoci Firm, as

11  indicated in Debtors' supplemental declaration [See Docket No. 157, pg. 44.].

12    **Lastly and summarily**, the granting of the order terminating the automatic stay in 2017

13  did not cause harm or damages, as claimed by Debtors, at any point in time prior to that order

14  being entered. Moreover, the order terminating the automatic stay was a "comfort order" since the

15  automatic stay terminated by operation of law when the case was closed in 2015. *See* 11 U.S.C. §

16  362(c)(2)(A) and(C). Debtors have not provided any admissible evidence which establishes that

17  Debtors were harmed by Caliber's actions. Similarly, Caliber has been diligently attempting to

18  resolve this issue with Debtors' Current Counsel and had counsel raised concerns and provided

19  notice to Caliber regarding the Motion to Reopen, it is quite possible that this OSC could have

20  been avoided in its entirety.

21                              <u>**CONCLUSION**</u>

22    For all of the reasons stated above, Caliber respectfully requests that sanctions not be

23  entered against it or its counsel. Caliber reapplied Debtors' payments, bringing the account

24  current, as soon as it had actual notice that the loan had been inadvertently escrowed by a prior

25  servicer. The inability of Debtors to obtain a discharge is largely or entirely a result of errors by

26  Debtors Prior Counsel's. The Debtors have not shown any damages suffered, let alone caused by

27  Caliber.

28

Additionally, Caliber has withdrawn the Default Notice and consents to vacatur of the RFS Order with proviso that the Senior Secured Claim (Claim No. 4, as amended) is reinstated, *nun pro tunc*, as of the date of the filing of the Senior Secured Proof of Claim. Doing so will provide Debtors with the full relief they are entitled to and to which they demand.

Finally, as described in Caliber's accompanying papers, Caliber requests the Eric Smith, Assistant Vice President—Bankruptcy and Foreclosure, be permitted to appear at any OSC in place of Caliber's Chief Executive Officer, Sanjiv Das.

DATED: August 21, 2018                    **PERKINS COIE LLP**


By: */s/ Sara L. Chenetz*
    David Biderman

Attorneys for U.S. Bank, N.A. as Trustee for
LSF9 Master Participation Trust and Caliber
Home Loans, Inc.


DATED: August 21, 2018                    **MALCOLM & CISNEROS, ALC**


By: */s/ Arturo Cisneros*
    Arturo Cisneros, Shareholder

Appearing on Its Own Behalf


DATED: August 21, 2018                    **MCCARTHY & HOLTHUS, LLP**


By: */s/ JaVonne Phillips*
    JaVonne Phillips, Partner

Appearing on Its Own Behalf

140955799.6

### DECLARATION OF SARA L. CHENETZ

Sara L. Chenetz, under penalties of perjury of the United States says:

1.    I am an attorney at law duly admitted to practice law before this Court. I am a partner in the law firm of Perkins Coie LLP, counsel in this case for Caliber (as defined in the accompanying Response of Caliber Home Loans, Inc., Malcolm and Cisneros, and McCarthy & Holthus LLP to Order to Show Cause Issued on August 2, 2018).

2.    I make this declaration in support of the Modification Motion. I have personal knowledge of the facts set forth herein. Defined terms not defined in this declaration have the meanings ascribed to them in the Modification Motion.

3.    Perkins Coie filed an appearance as Caliber's counsel in this case on August 14, 2018. Perkins Coie has been gathering pertinent facts to fully respond to the OSC. Simultaneously, we have been endeavoring to reach an agreement with the Debtors, through their current counsel, on terms on which the Debtors would agree to vacatur of the OSC, subject to approved by this Court.

4.    Rushmore informed me, on August 14, 2018, that the Debtors' loan (No. ******1779) is current.

Executed this 21st day of August 2018.

_/s/ Sara L. Chenetz_____
Sara L. Chenetz